N. L. LYONS & Co., INC., Plaintiff, *v.* EDWARD CORSI, as Industrial Commissioner of the State of New York, Defendant.

Supreme Court, Special Term, New York County, October 10, 1952.

*Henry Alexander* and *Abraham Wilson* for plaintiff.

*Nathaniel L. Goldstein, Attorney-General (Anthony M. Mauriello* of counsel), for defendant.

WALTER, J. In June, 1944, defendant State Industrial Commissioner promulgated his " Mandatory order No. 6 governing minimum wage standards in the hotel industry." He therein defined the term " hotel industry " as including " any establishment which, as a whole or part of its business activities, offers lodging accommodations for hire to the public, to employees, or to members or guests of members." At the end of the order as printed and sent by the commissioner to establishments in the industry as so defined there are the statements that the provisions of the order apply to males twenty-one years of age or over as well as to women and minors and that failure to pay the rates established is a misdemeanor punishable by fine and imprisonment.

The commissioner thus in effect has fixed minimum wages for men as well as for women and minors, and made the wages so fixed applicable to every establishment where lodging accommodations are offered to the public.

An owner and operator of men's lodging houses in the city of New York, on behalf of itself and of other such owners and

operators, here asserts that the commissioner's order is illegal and invalid and prays for a declaration of such invalidity and an injunction enjoining enforcement of the order as against men's lodging houses.

The commissioner clearly has authority to establish minimum wages for women and minors (*West Coast Hotel Co.* v. *Parrish*, 300 U. S. 379; Labor Law, art. 19, L. 1937, ch. 276; *People* v. *Beck*, 288 N. Y. 569, 672, certiorari denied 317 U. S. 696).

New York has not adopted a general minimum wage law for men, and perhaps accurately can be said to have studiously refrained from adopting one; but by chapter 792 of the Laws of 1944 the Legislature inserted in article 19 of the Labor Law dealing with minimum wages for women and minors a new section, section 563-a (renum. § 663-a by L. 1948, ch. 353) entitled " *Supplementary protection* ", by which it enacted: " To effectuate the aim of this article and to protect the minimum wage standards and rates provided for women and minors, no male twenty-one years of age or over shall be employed in an occupation at less than the minimum standards or rates of wages fixed for women and minors in such occupation under a minimum wage order."

Thus, while not itself establishing minimum wages for men, the Legislature said in clear and explicit language that when the commissioner fixes minimum wages for women and minors in a particular occupation it then shall be unlawful to pay to men in that particular occupation a wage less than the minimum which the commissioner has fixed for women and minors in that occupation. In that sense, and to that extent, therefore, the Legislature has provided a minimum wage for men; and I think there can be no doubt as to the validity of that legislation.

Plaintiff argues that it is unconstitutional to establish a minimum wage for men, but I think that argument already has been rejected in *United States* v. *Darby* (312 U. S. 100); for in that case the court sustained the constitutional validity of an act of Congress, the Fair Labor Standards Act, which prescribed minimum wages and maximum hours for both men and women and excluded from interstate commerce goods produced by persons who received less than such minimum wages or worked more than such maximum hours. The court specifically stated that the statute was not objectionable because applied alike to both men and women (p. 125).

As an act of Congress prescribing minimum wages for men does not violate the Fifth Amendment, I think it necessarily

follows that a State statute prescribing minimum wages for men does not violate the Fourteenth Amendment.

Plaintiff argues that section 663-a is invalid because it does not contain any legislative finding of fact or declaration of policy such as is contained in chapter 276 of the Laws of 1937. I think that entirely fallacious.

When the validity of legislation depends upon the existence of a certain state of facts or the reasonableness of its relation to the end sought to be obtained, a legislative finding that such state of facts or such reasonableness of relation exists frequently is of great assistance in sustaining the validity of the legislation, and in a doubtful case the presence or absence thereof may turn the scale one way or the other; but I think it never yet has been held, and that it should not be held, that such a legislative finding or declaration of policy is essential to the validity of the legislation. The validity thereof depends upon the existence of such state of facts or of such reasonableness of relation and not upon the presence or absence of a legislative finding upon the subject; and if the court, by any proper judicial procedure, can satisfy itself of the existence of the state of facts or the reasonableness of relation it will sustain the legislation despite the absence of any legislative finding or declaration. Somewhat differently phrased, the legislation will be sustained, in the absence of a clear showing, by legislative finding or otherwise, that the state of facts or relation cannot possibly exist.

The statute itself being valid, the next question is whether or not the commissioner's order is valid.

It is quite true, as plaintiff argues, that lodging houses are not hotels under either the common-law conception of hotels or under the definitions contained in many statutes (*Dixon* v. *Robbins,* 246 N. Y. 169; *Lyoles Realty Corp.* v. *Cannella,* 73 N. Y. S. 2d 10, 14; *Alsberg* v. *Lucerne Hotel Co.,* 46 Misc. 617; General Business Law, § 205; Multiple Dwelling Law, § 4), but that does not seem to me to be of any real significance. The commissioner was not bound to adopt that common-law conception or those statutory definitions of hotels, and the validity of his order depends, not upon whether in including lodging houses in the hotel industry, he made a scientifically correct definition, but upon whether the effect of his order, in conjunction with section 663-a, is to establish minimum wages for men in occupations other than the occupations as to which he has established minimum wages for women and minors; and as applied to this

case that means, as I see it, whether the bedmakers and clerks in Bowery lodging houses are in the same occupation as the host of women and minors who are employed as chambermaids, waitresses, clerks, etc., in fine and expensive hostelries. That there are material differences seems manifest, but courts are not permitted to inquire into the wisdom of the commissioner's order. Courts can inquire only as to the legality thereof, and I cannot say that in including Bowery lodging houses in his definition of the " hotel industry " the commissioner exceeded his jurisdiction or was arbitrary or capricious.

Plaintiff stresses the fact that lodging houses do not employ women or minors and actually are prohibited by law from so doing; but that, again, seems to me to be of no significance.

The definition of occupation in former section 552 (now § 652) of the Labor Law as meaning " an industry, trade, business or class of work in which women or minors are gainfully employed " was appropriate enough in article 19 as originally enacted by chapter 276 of the Laws of 1937, for it then was a statute authorizing minimum wages for women and minors only; but I think it would be a perversion of plain legislative intent to apply the definition to the entirely new section (§ 563-a; now § 663-a) inserted in article 19 seven years later by chapter 792 of the Laws of 1944. The aim of that new section was to safeguard the minimum wages which the commissioner prescribed for women and minors in particular occupations by prohibiting the employment of men in those occupations at wages less than the minimum which the commissioner had prescribed for women and minors; and the word occupation in that new section means class of work, regardless of who is employed therein. As I find that it was not illegal for the commissioner to treat bedmakers and clerks in Bowery lodging houses as being engaged in the same class of work as chambermaids, waitresses, clerks, etc. employed in fine and expensive hostelries, it is immaterial that the bedmakers and clerks in such lodging houses do not include women or minors.

I find no invalidity in the commissioner's order and the complaint accordingly must be and is dismissed.

The foregoing constitutes the decision required by the Civil Practice Act and judgment is to be entered thereon.